JOSEPH B. FLYNN *vs.* HENRY J. CUNNINGHAM & others.

Middlesex.     January 9, 1923. — March 2, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Will*, Validity.   *Unsound Mind.*   *Undue Influence.*

Upon a review of evidence submitted to a jury at the trial of two issues, whether an alleged testator, who at the time of the making of the alleged will was sixty-six years of age, unmarried, living with two elderly sisters and suffering from cancer of the stomach, was then of unsound mind, and whether he was subjected to undue influence by a certain person, not related to him, but employed in his

drug store, who was largely to benefit from the will if it was proved, it was *held*, that the trial judge rightly refused to rule that there was no evidence warranting the submission of the issues to the jury; and that this court was not concerned with the question, what weight should be given to the evidence.

PETITION, filed in the Probate Court on February 7, 1922, and afterwards amended, for the proof of the will of John A. Cunningham, late of Cambridge.

The following issues were framed in the Probate Court and were sent to the Superior Court for trial:

"1. Was said John A. Cunningham at the time of the execution of said alleged will of sound mind?

"2. Was the execution of said alleged will of said John A. Cunningham procured through the fraud or undue influence of Joseph B. Flynn exercised upon the said John A. Cunningham?"

The issues were tried in the Superior Court before *Flynn,* J. Material evidence is described in the opinion. At the close of the evidence, the petitioner asked the judge to rule as follows:

"1. That upon all the evidence the court must instruct the jury that the issue whether John A. Cunningham was of unsound mind must be answered in the negative.

"2. That upon all the evidence the court must instruct the jury that the issue whether Joseph B. Flynn exercised fraud or undue influence upon the testator must be answered in the negative.

"3. There is no evidence from which the jury can find that the instrument here in question was procured by the fraud or undue influence of Joseph B. Flynn."

The rulings were refused. The jury answered the first issue in the negative and the second in the affirmative; and the petitioner alleged exceptions.

*F. F. Collier,* for the petitioner.

*F. R. Mullin,* (*P. F. Spain* with him,) for the respondents.

DE COURCY, J. John A. Cunningham of Cambridge died January 14, 1922, and an instrument dated December 7, 1921, was offered for probate as his last will. The Probate Court framed jury issues as to his soundness of mind and as to the alleged fraud and undue influence of the petitioner in procuring the execution of the will, and a trial thereof in the Superior Court resulted in findings in favor of the contestants on both issues. The only question raised by the exceptions is whether the presiding

judge was warranted by the evidence in submitting the issues to the jury.

1. As to whether John A. Cunningham was of sound mind on December 7, 1921. On the evidence most favorable to the contestants the jury could find the following facts: The testator was sixty-six years of age. He had incorporated his business as the Cunningham Drug Company capitalized at $20,000, and owned seventeen hundred and fifty of the two thousand shares. Prior to August, 1921, he was a vigorous and active business man. Thereafter he declined rapidly; his eyesight failed so that by October 15 he was unable to read; his memory became impaired to the extent that he forgot the prices of standard articles in the store; he fell asleep in his office chair; and was unable to grasp the meaning of what was said to him. After he took to his bed he failed to recognize his brother; suspected his sister, Mrs. O'Donnell, of trying to poison him; talked disconnectedly and grasped at imaginary things. More than a week before he died he fell into a semi-comatose condition. His disease was cancer of the stomach, and there was expert testimony that this malady sometimes results in a tumor of the brain, and an impairment of reason and will. The testator was a widower, without children, and lived with his sisters Mrs. O'Donnell, aged fifty years, and Agatha Cunningham, aged sixty-four, both of whom were dependent on him for support. The alleged will made provisions for them which were materially less than what he intended, as indicated by his oral statements and by an earlier will and codicil. In view of the foregoing and other evidence relating to his condition, peculiarities and conduct, we are of opinion that the judge rightly submitted this issue to the jury, notwithstanding the evidence produced by the petitioner as to the testator's soundness of mind.

2. On the question of undue influence: There was testimony tending to show that the testator was susceptible to the influence of the petitioner, — such as his conduct in the latter's presence, and his declarations in Flynn's absence; his refusal to let his sister, Mrs. O'Donnell, continue making out the bills or assume charge of the candy department, because "Flynn did not want . . . [her] down there;" and the selection by Flynn of an attorney to write the will in controversy. The will itself furnishes

such evidence, when it is read in the light of the frequently expressed intention of the testator. His chief purpose, throughout his sickness, was to provide amply for his two dependent sisters, with whom he lived, and for whom he had a strong affection. Apart from some real estate, — as to which there is meagre testimony that he once said it was worth $20,000, — his property consisted of the drug business. He had recently refused to consider an offer of $40,000 for it. The net profits for 1921 were $11,227. He had many times said, in substance, that he would secure for his sisters a majority of the capital stock and the income of the store during their lives; and would leave the control with his brother, Dr. Joseph H. Cunningham, having explicit confidence that under his management the store would be properly conducted and the interests of his family protected. The will of June 26, 1920, substantially carried out this purpose, notwithstanding the bequest of nine hundred and forty-eight shares of the stock to the petitioner. When Flynn later bought two hundred shares, and the testator learned that this and the legacy would give him a controlling interest in the corporation, he made the codicil of July, 1921, for the purpose of preventing such a result. Nevertheless the will in question gives to each of the testator's sisters only $1,000 out of the dividends; while giving to Flynn not only the remainder (presumably $9,000 or more) but also the right to acquire the fifty-one per cent of the stock at the end of five years for $10,000 in cash or on "terms." This instrument also substitutes the Harvard Trust Company for the testator's brother as trustee.

We are not concerned with the weight to be given to this, and other similar testimony, or to that offered in behalf of the petitioner. From the evidence above recited, it is clear that there was evidence for the jury that the alleged will was one which the testator would not have made of his own free will, and that it was due to the controlling influence of the petitioner. *Neill* v. *Brackett,* 241 Mass. 534. *Goldsmith* v. *Gryzmish,* 238 Mass. 341.

*Exceptions overruled.*